1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                                 SOUTHERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,              )        Criminal Case No. 10-CR-2559-L
                                             )
12                          Plaintiff,       )
                                             )        **ORDER**
13                    v.                     )
                                             )
14                                           )
      MIGUEL ANGEL                           )
15            SANTOS-LAGUNES,                )
                                             )
16                          Defendant.       )
      _____)

17

18          Defendant is charged in a one count indictment with being a deported alien found in the

19    United States, in violation of 8 U.S.C. 1326(a) and (b).   Currently before the Court is

20    Defendant's motion to dismiss the indictment on the basis that his prior deportation was invalid.

21    **I.      Background**

22          Defendant is a 31 year old Mexican citizen who entered the United States in 1996.  On

23    September 20, 2002, Defendant was ordered deported from the United States by an Immigration

24    Judge ("IJ").

25          Defendant's criminal history includes:  a January 2002 conviction for kidnaping a minor

26    in Florida (sentence - 2 months jail); an October 2006 conviction for being a deported alien

27    found in the United States (sentence - 5 months custody); and a February 2010 conviction for

28    grand theft of account card (sentence - 240 days custody).   According to Defendant's

      immigration history, he was removed from the United States to Mexico on September 27, 2002;

1  November 6, 2006; and May 2, 2008.

2       On May 3, 2010, ICE agents encountered Defendant while he was in custody.  On June

3  30, 2010, Defendant was indicted in this case.

4  **II.**    **Defendant's Claims**

5       Defendant argues the 2002 deportation is invalid because the IJ failed to adequately

6  advise him that he was eligible for voluntary departure, and he did not knowingly and

7  intelligently waive his rights to counsel or appeal.  Defendant further argues that he suffered

8  prejudice because he had plausible grounds for obtaining voluntary departure relief.

9  **III.**    **Legal Standard**

10       A defendant in a § 1326 prosecution "has a Fifth Amendment right to collaterally attack

11  a removal order because the removal order serves a predicate element of his conviction." *United*

12  *States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1047 (9th Cir. 2004).  To succeed in a collateral

13  challenge to a removal order, a defendant must demonstrate: "(1) that he exhausted all

14  administrative remedies available to him to appeal his removal order, (2) that the underlying

15  removal proceedings at which the order was issued improperly deprived him of the opportunity

16  for judicial review, and (3) that the entry of the order was fundamentally unfair." *Id.*  A removal

17  order is "fundamentally unfair" when: (1) the defendant's due process rights were violated by

18  defects in his underlying deportation proceeding and (2) he suffered prejudice as a result of the

19  defects.  *Id.*; *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

20       An alien, however, is barred from collaterally attacking an underlying deportation order

21  "if he validly waived the right to appeal that order" during the deportation proceedings.  *Arrieta*,

22  224 F.3d at 1079.  The Government must establish by clear and convincing evidence that the

23  waiver was considered and intelligent.  *United States v. Pallares-Galan*, 359 F.3d 1088, 1097

24  (9th Cir. 2004).  If the IJ failed to inform Defendant of available relief from deportation, his

25  waiver would not be considered and intelligent.  *Id*. at 1096;  *United States v. Muro-Inclan*, 249

26  F.3d 1180, 1182 (9th Cir. 2001).

27  */ / /*

28  */ / /*

2

**IV.    Discussion**

Defendant provided the Court with a transcript of the deportation hearing.  According to the transcript, the following exchange occurred:

IJ:     . . . The purpose of this hearing today is to determine whether you shall be sent home or allowed to stay in this country.  During these proceedings you have certain rights.  First of all you have the right to have an attorney represent you at no expense to the Government.  At this time we are going to give you a copy of a legal aid list which is a list of attorneys in the area that may represent you for little or no fee.  I also want you to understand that during the proceeding you may call witnesses.  You may present documents or you may simply tell me anything in your own words.  The Immigration Service is represented by the man at the next table.  He may call witnesses and if so you may cross-examine those witnesses.  He may present documents; you can examine the documents and objects to the admissibility.  After I've heard all the evidence then I'll determine whether you shall be sent home or allowed to stay in this country.  If you disagree with the decision of the court you may appeal that decision to a higher court.  Now, you're entitled to more time to prepare your case and look for an attorney but I understand you want to return home to Mexico.  Is that true?

Def.:   Yes.

* * *

IJ:     Very well at this time the trial attorney is giving you a copy of a Notice to Appear, a copy of an I-213 which I'll mark into evidence as exhibits 1 and 2.  The Notice to Appear #1 states that you are not a citizen or national of this country is that true?

Def.:   Yes.

IJ:     And, uh, you are a native and citizen of Mexico?

Def.:   Yes.

IJ:     And you entered this country illegally in 1996?

Def.:   Yes.

IJ:     Very well, I find removability established.  You're 23 years of age?

Def.:   Yes.

IJ:     It cost $350 to pay for your airplane ticket home.  Do you want to pay for your airplane ticket home or do you want the Government to pay for it?

Def.:   The Government.

IJ:     Very well it [sic] the order of the court that you be removed and deported from this country back to your native country of Mexico.  Is that agreeable with you?

3

1    Def.:   Yes.

2    IJ:     The decision of the Court is final.

3    (Ex. G to Def. Motion to Dismiss.)

4    **1.     Voluntary Departure**

5    Voluntary departure under 8 U.S.C. 1229c, allows an immigration judge, in his discretion,

6    to permit an alien to voluntarily depart the United States as his or her own expense, as long as

7    the alien has not been convicted of an aggravated felony, or engaged in terrorist activities.  The

8    benefit of voluntary departure is that it allows a deportable alien to leave the country without

9    suffering the consequences of a formal deportation order.   At the time of Defendant's

10   deportation hearing, he had not been convicted of any aggravated felonies.  Therefore, it appears

11   that he was eligible for voluntary departure.

12   The Government argues that no due process violation occurred because the IJ offered

13   Defendant voluntary departure by asking him if he wished to pay for his ticket to Mexico.  The

14   Government states Defendant chose not to accept voluntary departure by opting to have the

15   Government pay for the ticket.  In support of its argument, the Government cites *United States*

16   *v. Martinez-Valdez*, 322 Fed.Appx. 507 (9th Cir. 2009).

17   In *Martinez-Valdez*, the Ninth Circuit affirmed this Court's finding that a deportation

18   hearing was valid where the IJ denied voluntary departure after the alien told the IJ he could not

19   pay his way out of the country.  *Id.*  There is, however, a critical factual difference between

20   *Martinez-Valdez* and this case.  In *Martinez-Valdez*, the IJ specifically addressed voluntary

21   departure during the group admonition part of the hearing.  The IJ explained the possibility of

22   voluntary departure eligibility, the benefits of voluntary departure in lieu of removal, and what

23   procedure would occur regarding the IJ's consideration of voluntary departure.  *See United*

24   *States v. Martinez-Valdez*, 07-CR-3401-L, Docket No. 31; Docket No. 15, Ex. B, at 8-10.  Then

25   the IJ asked the alien if he had the money to pay for his departure.

26   / / /

27   / / /

28   / / /

4

In contrast, in this case, the IJ never discussed voluntary departure generally, or specifically.[1/]  In fact, the IJ never said the words "voluntary" or "departure."  He never explained that voluntary departure required Defendant to depart at his own expense.  And he never told Defendant that he might have been offered voluntary departure if he chosen to pay for his own plane ticket.  So when the IJ asked Defendant if he wanted to pay for his plane ticket or if he wanted the government to pay for it, Defendant had no means of understanding the consequences of his answer.

Therefore, the Court finds that *Martinez-Valdez* is not controlling in this case.  Because the IJ failed to adequately advise Defendant of his eligibility for voluntary departure, the Court finds the deportation hearing violated Defendant's due process rights.

**2.     Right to Counsel**

Aliens in deportation proceedings have a statutory right to counsel at no cost to the government.  *Ram v. Mukasey*, 529 F.3d 1238, 1241 (9th Cir. 2008).  "Although IJs may not be required to undertake Herculean efforts to afford the right to counsel, at a minimum they must (1) inquire whether the petitioner wishes counsel, (2) determine a reasonable period for obtaining counsel, and (3) assess whether any waiver of counsel is knowing and voluntary."  *Id.*  In order for a waiver to be valid, an IJ must generally: (1) inquire <u>specifically</u> as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary affirmative response."  *Id.* at 1242 (emphasis added).

Defendant argues that the waiver of his right to counsel was invalid because the IJ never asked him directly if he wanted an attorney to represent him at the hearing.  The Government does not address this argument.

The Court agrees that Defendant's waiver of counsel was invalid.  Although the IJ told Defendant he had the right to have an attorney represent him, and that he could have more time

---

[1/] Also it is not clear that the IJ actually considered and denied voluntary departure for Defendant.  Notably, the IJ did not discuss the Defendant's equities with him.  He also did not state that he was denying voluntary departure when the Defendant opted to have the Government pay for his plane ticket.

to hire an attorney, the IJ never asked whether Defendant understood his rights.   More importantly, the IJ never <u>specifically</u> asked Defendant if he wanted to proceed without counsel. Instead, the IJ stated "Now, you're entitled more time to prepare your case and look for any attorney but I understand you want to return home to Mexico.   Is that true?"   Defendant responded "Yes."   The IJ's question is ambiguous.   It is unclear whether Defendant was agreeing that he wanted to proceed without counsel, or if he was agreeing that he wanted to return to Mexico.   Therefore, the Court cannot find that a knowing and intelligent waiver of the right to counsel occurred.   Accordingly, the Court finds the deportation hearing violated Defendant's due process rights.

### 3.   Right to Appeal

"It is 'mandatory' under the Due Process Clause that an IJ inform an alien of his or her ability to appeal a removal order during a removal proceeding." *United States v. Ubaldo-Figueroa*, 364 F.3d at 1048.   "Although a deportee may waive his right to judicial review of his deportation order, that waiver must be considered and intelligent.'   Otherwise, the deportee is deprived of judicial review in violation of due process." *United States v. Lopez-Vasquez*, 1 F.3d 751, 753-54 (9th Cir. 1993).

Defendant argues that his waiver of appeal was invalid because the IJ never determined whether he understood his right to appeal or whether his waiver was knowing and intelligent. The Government does not address this argument.

The IJ did tell Defendant that if he disagreed with the court's decision he could appeal to a higher court.   However, the IJ never asked Defendant if he understood his rights.   At the end of the hearing, the IJ simply asked Defendant if the result of the hearing was "agreeable" to him. Because the IJ failed to ensure that Defendant knew he had the right to appeal, the Court cannot find that Defendant's waiver was knowing and intelligent. *See e.g. Ubaldo-Figueroa*, 364 F.3d 1042 (finding alien's waiver of the right to appeal was not sufficiently considered and intelligent where the IJ failed to ensure the alien knew he had the right to appeal).   Accordingly, the Court finds the deportation hearing violated Defendant's due process rights.

/ / /

1

### 4.    Prejudice

2          Next, Defendant must establish he was prejudiced by the defects.  *United States v. Arce-*

3  *Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998).  "In order to establish prejudice, [the defendant]

4  does not have to show that he actually would have been granted relief.  Instead, he must only

5  show that he had a 'plausible' ground for relief from deportation."  *Arrieta,* 224 F.3d at 1079.

6          Defendant argues he had plausible grounds for voluntary departure relief because he had

7  been living in the United States for 6 years at the time of his deportation hearing, he held regular

8  employment, and because of that employment he had the financial means to pay for his plane

9  ticket back to Mexico.  Defendant also argues that his limited criminal history at the time of his

10  deportation was not serious enough to overcome his positive equities.  He cites several cases

11  where aliens with more serious criminal histories have been granted voluntary departure.  The

12  Government counters that Defendant cannot establish prejudice because voluntary departure is

13  discretionary.

14          The Court finds that it is plausible that if Defendant had been adequately advised of his

15  eligibility for voluntary departure, he may have answered the question about paying for his plane

16  ticket differently.  And had Defendant stated that he wanted to pay for his plane ticket, it is

17  certainly plausible that the IJ would have granted voluntary departure.

18  ### V.    Conclusion

19          Because the defects in Defendant's deportation hearing violated his due process rights,

20  and because he was prejudiced by the defects, the Court concludes that Defendant is entitled to

21  relief from his underlying deportation order under 8 U.S.C. 12326(d).  Accordingly, Defendant's

22  motion to dismiss the indictment for invalid deportation is **GRANTED.**

23          **IT IS SO ORDERED.**

24

25  DATED:  September 3, 2010

26                                                    _____

M. James Lorenz

27                                                    United States District Court Judge

28

7